**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| FIRST AMERICAN CORELOGIC, INC., §<br>§<br>*Plaintiff*, §<br>§<br>v. §<br>§<br>FISERV, INC., INTELLIREAL, LLC, §<br>INTERTHINX, INC., LENDER §<br>PROCESSING SERVICES, INC., §<br>PRECISION APPRAISAL SERVICES, INC., §<br>REAL DATA, INC., REALEC §<br>TECHNOLOGIES, INC., ZILLOW, INC., §<br>AMERICAN FLOOD RESEARCH, INC., §<br>ELECTRONIC APPRAISER, INC., ESPIEL, §<br>INC., §<br>§<br>*Defendants*. §  | CIVIL ACTION NO. 2:10-CV-132-TJW |

**MEMORANDUM OPINION AND ORDER**

**I.    Introduction**

Before the Court are the Motion for Protective Order by First American CoreLogic, Inc. ("CoreLogic") (Dkt. No. 75) and CoreLogic's Opposed Motion to Reclaim Certain Privileged Documents Filed Under Seal and Submitting for In Camera Review.  (Dkt. No. 86.)    The Court, having considered the motions and the arguments of counsel, DENIES CoreLogic's Motion for Protective Order (Dkt. No. 75.) and DENIES CoreLogic's Opposed Motion to Reclaim Certain Privileged Documents.   (Dkt. No. 86.)

## II.     Factual and Procedural Background

The present case arises out of a patent infringement claim filed by CoreLogic against multiple defendants.[1] The two motions addressed in this Order arise out of a single motion filed by CoreLogic seeking a protective order. In CoreLogic's motion for protective order (Dkt. No. 75) it claims that from July 2009 until February 2010 Robert Walker and Renjie Chen assisted CoreLogic's in-house counsel with a pre-filing investigation of the current litigation. This investigation included learning about the patent-in-suit, the infringing products, and CoreLogic's litigation strategy. Then in February 2010, CoreLogic claims both Walker and Chen quit working with CoreLogic and went to work for Lender Processing Services, Inc. ("LPS")—one of the defendants in this litigation. Now Defendant LPS claims Walker and Chen may be persons knowledgeable about its accused products and LPS may potentially use them as witnesses in this case. CoreLogic's obvious concern is CoreLogic's potential privileged or protected information that Walker and Chen may have knowledge and could potentially disclose to Defendant LPS. Therefore, CoreLogic filed a motion for protective order (Dkt. No. 75) and asks the Court to prevent LPS or its counsel from communicating with Walker or Chen in connection with this present litigation. Defendant LPS opposes this motion and argues that although it agrees that LPS should not be able to discover the privileged information that Walker or Chen possess, LPS states that less restrictive protective measures are available.

In CoreLogic's motion for protective order, however, when attempting to bolster its argument that Walker and Chen were privy to privileged communications at CoreLogic, CoreLogic attached as exhibits to its motion a declaration and six emails to illustrate a sample of

---

[1] The defendants include Fiserv, Inc., Intellireal, LLC, Interthingx, Inc., Lender Processing Services, Inc., Precision Appraisal Services, Inc., Real Data, Inc., Realec Technologies, Inc., Zillow, Inc., American Flood Research, Inc., Electronic Appraiser, and Inc., Espiel, Inc.

the privileged communications of which Walker and/or Chen had participated.  (*See* Dkt. No. 75, Dyer Decl., ¶¶ 1-6, Exs. 1-6.)  CoreLogic freely admitted in its motion that the emails were privileged.  But CoreLogic did not submit the exhibits *in camera*; instead, CoreLogic attached the exhibits under seal.  In addition to attaching the exhibits under seal, CoreLogic served a copy of the privileged emails and declaration to every defendant in the present lawsuit.  Further, nowhere in CoreLogic's motion for protective order did it state or indicate that it intended to file the exhibits for *in camera* review or for the "Court's eyes only."  Only after Defendant LPI filed its response to CoreLogic's motion for protective order, pointing out that CoreLogic had waived its privilege to those documents by attaching them as exhibits and serving them on the parties, did CoreLogic claim that it meant to file the exhibits *in camera*.

This course of conduct by the parties led CoreLogic to later file its second motion addressed by this Order, which is CoreLogic's Motion to Reclaim Certain Privileged Documents Filed Under Seal and Submitting for In Camera Review.  (Dkt. No. 86.)  In this motion CoreLogic claims that it inadvertently filed the declaration and emails under seal and that it meant to file them *in camera*.  Therefore, the motion requests the Court to grant CoreLogic's request to reclaim these documents from the Court's files under seal so that they may be lodged with the Court for *in camera* review.  Defendant LPS, and at least one other defendant, oppose this motion and argue that CoreLogic's disclosure was not inadvertent and that CoreLogic waived its privilege to those documents and has also created a subject matter waiver.

**III.     Analysis**

    **A.     Plaintiff's Motion to Reclaim Certain Privileged Documents**

The Court holds that CoreLogic has waived its attorney-client and/or work product protection with respect to the seven documents it disclosed to Defendants by attaching the documents under seal as exhibits to its motion for protective order and serving the documents on all parties. But the Court does not find a subject-matter waiver, thus CoreLogic has only waived its attorney-client privilege for the seven privileged documents it produced.

    *1.     Legal Standard*

The attorney-client privilege prevents disclosure of communications between an attorney and client that were made while seeking or rendering legal services. *Upjohn Co. v. United States*, 449 U.S. 383, 395 (1981). Disclosure, however, of attorney-client communications to a third party who lacks a common legal interest waives the attorney-client privilege. *In re Auclair*, 961 F.2d 65, 69 (5th Cir. 1992). In 2008, Congress created a new rule of evidence, Federal Rule of Evidence 502, which addresses inadvertent disclosures of privileged information. Rule 502(b) states:

> **Inadvertant disclosure**.—When made in a Federal proceeding or to a Federal office or agency, the disclosure does not operate as a waiver in a Federal or State proceeding if:
> (1) the disclosure is inadvertent;
> (2) the holder of the privilege or protection took reasonable steps to prevent disclosure; and
> (3) the holder promptly took reasonable steps to rectify the error, including (if applicable) following Federal Rule of Civil Procedure 26(b)(5)(B).

Defendants also allege that CoreLogic's alleged waiver creates a subject-matter waiver. The new Federal Rule of Evidence 502 also addresses subject-matter waiver. Rule 502(a) states:

> **Disclosure made in a Federal proceeding or to a Federal office or agency; scope of a waiver**.—When the disclosure is made in a Federal proceeding or to a Federal office or agency and waives the attorney-client privilege or work-product protection, the waiver extends to an undisclosed communication or information in a Federal or State proceeding only if:
> (1) the waiver is intentional;
> (2) the disclosed and undisclosed communications or information concern the same subject matter; and
> (3) they ought in fairness to be considered together.

In determining whether the privilege applies or has been waived, the burden is on the party asserting the privilege to demonstrate that the privilege applies. *Ferko v. Nat'l Ass'n for Stock Car Auto Racing, Inc.*, 218 F.R.D. 125, 134 (E.D. Tex. 2003). In addition, the party asserting the privilege must prove that waiver did not occur. *Id.*

    2.    *Discussion*

At the outset, before discussing CoreLogic's inadvertent disclosure argument, the Court briefly notes that if CoreLogic did not inadvertently disclose the documents, then the privilege was waived to those documents. In the present case, Corelogic filed the privileged exhibits and declaration under seal and then served them on all the defendants. If the documents had been filed *in camera* with the Court then the privilege would not have been waived because the documents would not have been disclosed to any third parties except the Court. But the documents were not filed *in camera*—they were filed under seal and then served on the defendants.[2] Filing under seal is not the same as filing *in camera*. Filing under seal protects the documents from view of the public. On the other hand, filing documents *in camera* protects the documents from view of the public and also other parties in the case—only the Court can view the documents. Therefore, filing the documents under seal and serving them on the defendants has

---

[2] Note, however, that Local Court Rule CV-5(a)(7) states that the counsel filing the documents under seal "is responsible for serving documents under seal to opposing counsel, and may do so in electronic form."

the same effect as disclosing documents to a third party and thus waiving the privilege. Hence, CoreLogic's only chance in retaining the privilege with respect to those documents is to succeed in its argument that the documents were inadvertently filed under seal instead of *in camera*.

Regarding CoreLogic's inadvertent disclosure argument, as noted above, Federal Rule of Evidence 502(b) outlines the federal rule for inadvertent disclosure of privileged information. Before Federal Rule of Evidence 502(b) was signed into law, the Fifth Circuit considered a five factor test in determining whether disclosure of privileged information was inadvertent: (1) the reasonableness of precautions taken to prevent disclosure; (2) the amount of time taken to remedy the error; (3) the scope of discovery; (4) the extent of the disclosure; and (5) the overriding issue of fairness. *Alldread v. City of Grenada*, 988 F.2d 1425, 1433 (5th Cir. 1993). In determining whether the inadvertent disclosure exception is satisfied under the new Rule 502(b), the Rule's Advisory Committee Notes state that Rule 502(b) "does not explicitly codify that test, because it is really a set of non-determinative guidelines that vary from case to case." Fed. R. Evid. 502, Advisory Committee Notes. But the Advisory Committee Notes also state that the "rule is flexible enough to accommodate any of those listed factors." *Id.*

In this Court's view, the unique facts of the present case are not what Congress or the Advisory Committee had in mind when drafting Rule 502(b). Rule 502(b) and the previous five factor test outlined above were designed primarily to cope with the increasingly common problem in massive discovery where thousands or millions of documents are produced and a few privileged documents are "inadvertently" disclosed along with the millions of other documents.[3] This case, however, does not involve the inadvertent disclosure of documents along with millions of other

---

[3] *See* Fed. R. Evid. 502, Advisory Committee Notes; 6 Charles Alan Wright et al., *Federal Practice and Procedure* § 5445 (1st ed., Supp. 2010).

documents. Instead, Corelogic filed the privileged exhibits and declaration under seal and then served them on all the defendants. Hence, Defendant LPS, in essence, argues that CoreLogic *advertently* disclosed the documents to the defendants and thus waived its privilege.

The Court does not find the old five factor test particularly useful in the present case because it was created primarily for a different situation.[4] The Court, therefore, need not apply that test in this unique case. Indeed, the Advisory Committee Notes state that Rule 502(b) "does not explicitly codify that test" because the factors are non-determinative guidelines and that Rule 502(b) is flexible. Fed. R. Evid. 502, Advisory Committee Notes. Rather, the Court considers the text of Rule 502(b) in the present case.[5] The text of Rule 502(b) plainly states that one of the three requirements for the inadvertent disclosure exception to apply is that "the disclosure is inadvertent." Thus, the *disclosure* itself, not the *waiver* of the privilege, must have been inadvertent.[6]

Keeping the text of Rule 502(b) in mind, CoreLogic has not met its burden of proof in showing that the disclosure of the seven documents was inadvertent. CoreLogic only provides an affidavit by one of its attorneys stating that the documents were inadvertently filed under seal and were intended to be lodged with the court for *in camera* review only. Thus, CoreLogic's

---

[4] Even applying the old five factor test, the Court would reach the same result. The first two factors, particularly, point in favor of waiving the privilege regarding the declaration and the six emails because the disclosure was not inadvertent. First, CoreLogic has not shown, as the party with the burden of proof, any reasonable precautions taken to prevent disclosure. Filing the documents under seal is not a reasonable precaution to prevent disclosure when, in fact, CoreLogic was actually disclosing the documents to the opposing parties. Second, CoreLogic has not shown it attempted to remedy the disclosure in an adequate amount of time. Although it did attempt to reclaim the documents from the defendants a few weeks after it disclosed them, this was only done after Defendant LPS filed a response pointing out that CoreLogic had waived its privilege. The final three factors do not point in favor of one side or another.

[5] Federal Rule of Evidence 502 is new and neither the parties nor the Court has identified any binding authority in this Circuit or District that specifically interprets Rule 502(b) as applicable to this case. Further, few appellate courts, if any, have had a chance to interpret the rule.

[6] It has long been the general rule that "[a]n intent to waive one's privilege is not necessary for such a waiver to occur." *In re Grand Jury Invest. Of Ocean Transp.*, 604 F.2d 672, 675 (D.C. Cir. 1979).

reasoning is that because the documents were inadvertently filed under seal then they were inadvertently disclosed. On the other hand, there is no indication in CoreLogic's original motion for protective order, which attached the privileged documents, that those documents were intended to be reviewed *in camera*. The motion never states the words "*in camera*" at any point and the motion does not include any language indicating that the documents were to be viewed by the Court's eyes only. Therefore, CoreLogic has not satisfied its burden of proof with only an affidavit by one of its own attorney's stating that it meant to file *in camera*—especially given that the affidavit was only filed several weeks after Defendant LPS filed a pleading indicating that CoreLogic had waived its privilege. Under the facts of this case, the Court is not willing to set a precedent allowing an exhibit to be considered as filed *in camera* when the party first filed the exhibit under seal (and served the other parties with the documents), and then later merely filed an affidavit claiming the exhibit was supposed to be *in camera*.[7]

Although the Court holds that the privilege for the seven documents has been waived by CoreLogic's disclosure, the Court does not hold that CoreLogic's disclosure creates a subject-matter waiver. Federal Rule of Evidence 502(a) governs subject-matter waiver in a Federal proceeding and it states that if the attorney-client privilege or work product protection has been waived regarding a communication "the waiver extends to an undisclosed communication or information in a Federal or State proceeding only if: (1) the waiver is intentional . . . ." In the present case, CoreLogic has met its burden of proof that its waiver of the privilege was not intentional. CoreLogic may have advertently disclosed documents that consequently waived its

---

[7] The Court is not holding so far that a document first filed under seal can never later be considered to have been filed *in camera*. Perhaps, for example, this situation may be different if CoreLogic had discussed in its motion for protective order that the documents were filed *in camera* to be considered by the Court, but then accidently filed the documents under seal and served them to the parties.

privilege, but CoreLogic was not intending to waive its privilege. As CoreLogic states in its affidavit, CoreLogic mistakenly filed its documents under seal and should have filed them *in camera* in order to maintain its privilege. CoreLogic's motion for protective order even states that the privileged exhibits attached to the order "are intended to remain confidential and privileged." (Dkt. No. 75, at 11.) This supports the Court's finding: although CoreLogic may have accidently waived its privilege regarding documents that were advertently attached under seal and disclosed to third parties, CoreLogic did not intend to waive its privilege. Thus, the Court holds there is not a subject-matter waiver, and the attorney-client privilege and/or work product protection are only waived for the seven documents attached under seal to CoreLogic's motion for protective order. (*See* Dkt. No. 76., Dyer Decl., Exs. 1-6.)

    **B.**    **Plaintiff's Motion for Protective Order**

The Court holds that CoreLogic's motion for protective order should be denied, and the parties are ordered to meet and confer to discuss a solution to safeguard CoreLogic's privileged communications that are possessed by Walker and Chen.

    *1.*    *Legal Standard*

Federal Rule of Civil Procedure 26(c) gives the Court the power to issue protective orders. Rule 26(c) states:

> A party or any person from whom discovery is sought may move for a protective order in the court where the action is pending . . . . The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following:
> (A) forbidding the disclosure or discovery;
> . . .
> (D) forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters.

Further, "Rule 26(c)'s requirement of a showing of good cause to support the issuance of a protective order indicates that '[t]he burden is upon the movant to show the necessity of its issuance.'" *In re Terra Int'l, Inc.*, 134 F.3d 302, 306 (5th Cir. 1998).

### 2. *Discussion*

CoreLogic moves this Court for a protective order preventing LPS or its counsel from communicating with Walker and Chen in connection with the present action. CoreLogic states:

> The highly unusual circumstances, and the improper, untrustworthy and suspicious nature of Walker's and Chen's activities prior to jumping ship from CoreLogic to LPS, demand significant protective measures be imposed to prevent the disclosure of CoreLogic's privileged information. CoreLogic believes that the only way to adequately safeguard its privileged information is to prohibit Walker and Chen from communicating with anyone at LPS, or its counsel for this case, regarding the issues related to the current litigation.

(Dkt. No. 75, at 13.) The Court disagrees with a protective order stretching as far as CoreLogic requests because CoreLogic has not met its burden of showing the necessity of the protective order. Further, CoreLogic has not pointed to any binding caselaw that is on point that would allow for such relief as CoreLogic requests.

LPS is entitled to discover any factual, non-privileged information that Walker or Chen may have acquired while at CoreLogic.[8] *See* Fed. R. Civ. P. 26(b); *Upjohn*, 449 U.S. at 395 ("The privilege only protects disclosure of communications; it does not protect disclosure of the underlying facts by those who communicated with the attorney."). In addition, LPS is clearly entitled to have discussions with Walker and Chen regarding LPS's own products. Because CoreLogic's proposed protective order would deny LPS discovery to these types of information, the Court will not grant such a protective order.

---

[8] Of course, discovery of CoreLogic's confidential information may be subject to some sort of protective order, but Defendants would still be entitled to some form of discovery of any information that is not privileged.

CoreLogic's privileged information can be protected by less restrictive measures. LPS has a policy prohibiting employees from accessing, using or disclosing any proprietary information or other trade secret belonging to a former employer, and Walker and Chen have signed acknowledgments of that policy. LPS has also offered to conduct depositions of Walker and Chen for the sole purpose of determining the boundaries of their knowledge and whether they possess any relevant, non-privileged information. The Court does not hold here whether these or other measures are appropriate. Instead, at this time, the Court only denies CoreLogic's request to completely wall Walker and Chen from communicating with LPS or its counsel in connection with the present action. The parties, LPS and CoreLogic, are ordered to meet and confer for the purpose of determining an adequate solution to protect CoreLogic's privileged information[9] while still allowing LPS to discover factual, non-privileged information from its employees Walker and Chen. Further, the Court has observed from the briefing that there has been some dispute regarding what is required to satisfy the "Meet and Confer" requirement in good faith. Before meeting and conferring as the Court has ordered above, the attorneys for the parties are ordered to read Local Court Rule CV-7(h).[10]

### III. Conclusion

Therefore, the Court, having considered the motions and the arguments of counsel, DENIES CoreLogic's Motion for Protective Order (Dkt. No. 75.) and DENIES CoreLogic's

---

[9] As discussed above in this Order, CoreLogic has waived its privilege with respect to the privileged documents it attached as exhibits and served on the parties in its motion for protective order. But since the Court did not find a subject matter waiver, CoreLogic still has protection of other privileged information of which Walker or Chen may possess or have knowledge.

[10] Particularly, the parties should pay attention to the portion that states "[i]n any discovery-related motion, the substantive component requires, at a minimum, a personal conference, **by telephone** or **in person**, between the lead trial counsel **and** any local counsel for the movant and the lead trial counsel **and** any local counsel for the non-movant." Local Court Rule CV-7(h) (emphasis added).

Opposed Motion to Reclaim Certain Privileged Documents. (Dkt. No. 86.) CoreLogic has waived its privilege regarding the seven privileged documents it produced along with its motion for protective order, but the Court does not find a subject-matter waiver. Further, the parties are ordered to meet and confer to discuss a solution to safeguard CoreLogic's privileged communications that are possessed by Walker and Chen. Of course the denial of CoreLogic's Motion for Protective Order (Dkt. No. 75) is without prejudice to request a more limited protective order if no solution is reached after meeting and conferring with Defendant LPS.

It is so ORDERED.

SIGNED this 2nd day of December, 2010.

_T. John Ward_
T. JOHN WARD
UNITED STATES DISTRICT JUDGE