## THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

---

| | | |
|---|---|---|
| CORELOGIC INFORMATION SOLUTIONS, INC. | ) ) ) | |
| Plaintiff, | ) | |
| v. | ) ) | Case No. 2:10-cv-00132-RSP |
| FISERV, INC., INTERTHINX, INC., and AMERICAN FLOOD RESEARCH, INC., | ) ) ) | |
| Defendants. | ) ) | |

---

## INTERTHINX'S OPPOSITION TO CORELOGIC'S
## MOTION TO AMEND THE COMPLAINT

Defendant Interthinx, Inc. opposes CoreLogic Information Solutions Inc.'s eleventh hour attempt to amend its Complaint. Interthinx has never consented to the trial of a breach of contract claim in this case and such an amendment would be extremely prejudicial to Interthinx. CoreLogic should not be permitted to amend its Complaint in the middle of the jury trial of this case for the following reasons:

(1)     The relevant agreement between the parties contains a jury waiver. CoreLogic is therefore not entitled to have its breach of contract claim heard by a jury. Paragraph 13.8 of the parties' 2006 License Agreement states:

> Each of the parties agrees that it shall not seek a jury trial in any proceeding based upon or arising out of or otherwise related to this Agreement or any of the other documents and instruments contemplated hereby and each of the parties hereto waives any and all right to such jury trial.

*Id.* The 2002 License Agreement contains a similar provision. *See id.*, Sect. 14.8. Having expressly waived its right to have any breach of contract claim against Interthinx heard by a jury, CoreLogic is contractually prohibited from obtaining the relief it seeks.

(2)     Although the basis for CoreLogic's breach of contract claim is not entirely clear, if the claim asserts a failure to pay fees, then CoreLogic is obligated under the License to provide 10 days notice and an opportunity to cure.  CoreLogic has not done so.  *See* 2006 License Agreement, Sect. 5.2.  If its claim arises under the 2002 License Agreement, then CoreLogic's claim is not only time-barred (either under New York's six year limitation period for contracts, *see* N.Y. Civ. Prac. Laws & Rules § 201 et seq., or its four year period for the sale of goods, N.Y. UCC Law § 2-725 ), but that Agreement required CoreLogic to provide thirty days' notice and an opportunity to cure, which it also has not done.  *See* 2002 Agreement, Sect. 6.2.

(3)     CoreLogic's proposed amendment is futile and thus should not be allowed.  *See, e.g., Rosenblatt v. United Way of Greater Houston*, 607 F.3d 413, 419 (5th Cir. 2010) (a court may deny leave to amend complaint if amendment would be futile).   CoreLogic apparently contends that Interthinx was not authorized to use its data to fuel Interthinx's internal AVM.  The First Revised Exhibit A to the License Agreement states:

> Customer may use … Information to create fraud prevention and decision support tools ("Customer's Product"), a sample of which is attached hereto as Exhibit A-2 (Sample Customer's Product).  Customer may provide Customer's Product to Customer's End Users through the following password protected internet sites: http://www.fraudguard.com....

During his cross-examination, Richard Lombardi, CoreLogic's corporate representative testified as follows:

```
12  Q.  Isn't AVM part of a fraud prevention and
13  decision support tool?
14     A.  It could be.
15     Q.  Okay.  So if -- if a contract says you can use
16  something for your internal business purpose of creating
17  fraud prevention and decision support tools, an AVM
18  could be covered by that language?
19     A.  An AVM could be part of a fraud prevention
20  tool, is what you asked me.  And then you said, could an
21  internal business purpose of creating -- I -- I'm lost
```

ME1 14164009v.1

22  in that question.  Try again.
23    Q.  All right.  So I want to understand.  You said
24  *an AVM could be part of a fraud prevention and decision*
25  *support tool, right?  That's what you just told me.*
1    A.  *It could be.*
2    Q.  Okay.  So if I have a contract that says I can
3  use something for my internal business service of
4  creating a fraud prevention and decision support tool,
5  that could refer to an internal AVM.
6    A.  Could refer to an internal AVM....

September 25, 2012 Morning Session Transcript at 71:12 to 72:6 (emphasis added).  The Court

should interpret the contract, as a matter of law, and should hold that the License Agreement

permits Interthinx to use CoreLogic data for its internal AVM.  *See Interactive Motorsports &*

*Entm't Corp. v. Dolphin Direct Equity Partners, LP*, 419 Fed. Appx. 60, 61 (2d Cir. N.Y. 2011)

(interpretation of the terms of a legally binding agreement, such as a contract, are questions of

law); *Miller-Jacobson v City of Rochester*, 35 Misc. 3d 846, 850 (N.Y. Sup. Ct. 2012) ("The

proper interpretation of an unambiguous contract is a question of law for the Court.").[1]  The

Court should also hold that, in light of CoreLogic's concession that using data to fuel an internal

AVM can be an internal business service of creating a fraud prevention and decision support

tool, there can be no breach.  Accordingly, CoreLogic's proposed amendment should be denied

as futile.

(4)    An amendment at this late date would be extremely prejudicial to Interthinx.  In

order to adequately defend against the breach of contract claim CoreLogic seeks to belatedly add

to the case, Interthinx would need to take the depositions of the CoreLogic account

representatives who negotiated the relevant contracts including: Derek Jones, John Smith, John

---

[1]    The License Agreement is governed by New York law.  *See id.*, Sect. 13.8 ("The interpretation and construction of this Agreement, and all matters relating hereto, shall be governed by the laws of the State of New York applicable to agreements executed and to be performed solely within such State.").

3

Smartz, as well as other CoreLogic representatives with knowledge of the contracts between the parties such as Ron Tateman and Joe Pryor.  Interthinx is entitled to know what the actual negotiators of the contract, and others involved, understood the contracts to mean, and, more importantly, what their understanding was as to whether using CoreLogic's data to run an internal AVM was a permitted application. Interthinx would also need to conduct discovery tailored to this claim.  Indeed, because this claim has never been part of this case, Interthinx did not select its trial exhibits with this claim in mind, nor did it subpoena or include key witnesses to discuss this claim, such as Mr. Smartz and Mr. Spowart.

Interthinx is also not aware of the damages theory CoreLogic is pursuing in connection with this claim and would need to conduct damages discovery before being able to fully defend against this claim.  After all, Interthinx has paid all invoices it received from CoreLogic.  If CoreLogic contends that Interthinx violated the agreement by using its data in an internal AVM without permission, then CoreLogic must show how this prohibited use caused it any damages in light of its agreement to allow Interthinx to use this data for its internal business purposes.  At this point in time, Interthinx has no knowledge of CoreLogic's damages theory and CoreLogic has failed to present any such theory at trial.  *See Ashe v. Corley*, 992 F.2d 540, 543 (5th Cir. 1993) (affirming denial of request to add a new cause of action less than one week before trial on grounds that doing so "would prejudice the opposing party").  *See also Coppedge v. K.B.I., Inc.*, 2007 WL 1791717, at *5 (E.D. Tex. 2007) ("In determining implied consent, the Court should consider whether the party has had a fair opportunity to defend against the claim and would be prejudiced in presenting its own case").

As to damages, CoreLogic must also show why its damages are not barred by the limitation of liability provisions in the License Agreement.  The License Agreement contains

various Limitation of Liability provisions in favor of Interthinx.  *See* 2006 License   Agreement, Sect. 11.2 (*e.g.*, "CUSTOMER SHALL HAVE NO LIABILITY UNDER OR IN ANY WAY RELATED TO THIS AGREEMENT FOR ANY LOSS OF PROFIT OR REVENUE OR FOR ANY CONSEQUENTIAL, INDIRECT, INCIDENTAL, SPECIAL OR EXEMPLARY DAMAGES ….").  Interthinx has not been given an adequate opportunity to explore the issue of damages.  It does not even know the amount of damages CoreLogic is seeking in connection with this claim.

Interthinx has also not been afforded an adequate opportunity to explore what affirmative defenses it has to this new claim, such as laches, waiver, and estoppel in the breach of contract context.

(5)     There was a deadline for filing amended pleadings in this case and CoreLogic offers no reasoned explanation as to why it should not be bound by that deadline.  It has long been on notice of Interthinx's license defense and had ample opportunity to amend its complaint. The Court has excluded defendant's supplemental infringement contentions and DataQuick documents for not being timely produced.  Plaintiff should also have to abide by the Court's rules and deadlines, particularly when the failure to do so is highly prejudicial to Interthinx.  *See Smith v. EMC Corp.*, 393 F.3d 590, 595 (5th Cir. 2004) (applying undue prejudice and delay factors as weight toward denying Rule 15(b) motion).

(6)     CoreLogic has not met the standard for amendment under Fed. R. Civ. P. 15(b)(2).  This Rule states, in pertinent part, "When an issue not raised by the pleadings is tried by the parties' express or implied consent, it must be treated in all respects as if raised in the pleadings." *Id.*  Interthinx does not expressly consent to the trial of any breach of contract claim. The Court must therefore find that Interthinx gave its implied consent.  "In determining whether

parties tried an issue by implied consent, the court considers (i) whether the parties recognized that the issue entered the case at trial; (ii) whether the evidence supporting the issue was introduced at trial without objection; and (iii) whether a finding of trial by consent would prejudice the opposing party." *National Business Forms & Printing, Inc. v. Ford Motor Co.*, 671 F.3d 526, 538 (5th Cir. 2012).   During the cross-examination of Mr. Lombardi, counsel for Interthinx clearly indicated, through his questioning, that he did not believe this case involved a breach of contract claim.   While evidence was offered on the parties' contracts, such evidence was introduced to address Interthinx's defense of license.   And the law is clear that Interthinx has not consented to the trial of any breach of contract claim by raising the defense of license.   To the contrary:

> Whether the parties recognized that the unpleaded issue entered the case at trial often depends on whether the evidence that supports the unpleaded issue is also relevant to another issue in the case. *If the evidence that supports the unpleaded issue is also relevant to another issue in the case, the introduction of this evidence may not be used to show consent to trial of a new issue absent a clear indication that the party who introduced the evidence was attempting to raise a new issue.*

*Triad Elec. & Controls, Inc. v. Power Systems Engineering, Inc.*, 117 F.3d 180, 194 (5th Cir. 1997) (emphasis added) (citing *United States v. Shanbaum*, 10 F.3d 305, 312–13 (5th Cir. 1994)).   Based on this settled law, the fact that Interthinx has put on evidence to support its defense of license, and that CoreLogic has attempted to rebut this evidence, may not be construed as consent to belatedly add a breach of contract claim to this case.   In conducting the Rule 15(b) analysis, the Court must also consider the extreme prejudice, as discussed above, attendant to this late amendment.   Interthinx has not been able to depose or subpoena the witnesses most knowledgeable about the parties' agreements.   As such, serious due process

concerns would be raised by forcing Interthinx to litigate this case without giving it the right to obtain all necessary evidence to fully address it.

(7)     When conducting the Rule 15(b) analysis, the Court must weigh the due process implications of adding a claim so late in the case.  The principal purpose of Rule 15(b) is judicial economy.  *See Deere & Co. v. Johnson*, 271 F.3d 613, 621 (5th Cir. 2001). When the necessary elements of the Rule are present, amending the pleadings saves judicial resources and avoids the necessity of a new trial.  *See id.* at 621-22 n.7.  However, "saving resources usually takes a back seat to procedural due process."  *Id.* at 622.  Therefore, in the absence of express consent, "trial of unpled issues by implied consent is not lightly to be inferred under Rule 15(b), and such inferences are to be viewed on a case-by-case basis and in the light of the notice demands of procedural due process."  *Id.  See also Triad Elec. & Controls, Inc. v. Power Sys. Eng'g, Inc.*, 117 F.3d 180, 193-94 (5th Cir. 1997).  Each party is entitled to know what is being tried, or at least have the means to find out.  *See Jimenez v. Tuna Vessel Granada*, 652 F.2d 415, 420 (5th Cir. 1981) (noting that notice is a critical element of procedural due process, and denial of procedural due process is tantamount to "trial by ambush").  Therefore, the party charged must be given an opportunity to fully respond to defend against the theories presented, and courts must be ever aware of the due process rights of the parties.  *See Power-One, Inc. v. Artesyn Techs., Inc.*, 2007 U.S. Dist. LEXIS 75685, at *17 (E.D. Tex. Oct. 11, 2007).  *See also Morgan and Culpepper, Inc. v. Occupational Safety and Health Review Comm'n*, 676 F.2d 1065, 1068 (5th Cir. 1982) (noting that it is improper to prejudge possible defenses which a party may assert, and that parties should have a full opportunity to present any and all possible defenses).

Here, Interthinx does not fully understand what portions of the contract CoreLogic claims have been breach (*e.g,* do they contend an internal AVM was a derivative work, how do they

define derivative work, was the use of an AVM not a business purpose despite Mr. Lombardi's testimony, etc.).  Similarly, Interthinx has no knowledge of how CoreLogic believes it has been damaged, or what its damages claim is.

## CONCLUSION

For the foregoing reasons, CoreLogic's Motion to Amend should be denied.

Dated:   September 26, 2012

Respectfully submitted:

/s/ David Himelfarb
Lee Carl Bromberg, Esq.
Erik Paul Belt, Esq.
David Himelfarb, Esq.
Kelly Gabos, Esq.
Keith Toms, Esq.
Jennifer Itzkoff, Esq.
**McCARTER & ENGLISH, LLP**
265 Franklin Street
Boston, MA 02110
Telephone: 617-449-6500
Facsimile:  617-607-9200
lbromberg@mccarter.com
ebelt@mccarter.com

John M. Pickett, Esq.
State Bar No. 15980320
**THE LAW OFFICES OF
JOHN PICKETT**
4122 Texas Boulevard
Texarkana, Texas 75501
Telephone: 903-794-1303
Facsimile: 903-794-5098
jpickett@jpickettlaw.com

*Attorneys for* **INTERTHINX, INC.**

## CERTIFICATE OF SERVICE

I hereby certify that on September 26, 2012, all counsel of record who are deemed to have consented to electronic service were served with a copy of this document via the Court's CM/ECF system pursuant to Local Rule CV-5(a)(3).

/s/ David Himelfarb

8

ME1 14164009v.1